```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/04/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
UNITED STATES OF AMERICA                                          :
                                                                  :
            -v-                                                   :     S2 19-CR-497 (NSR)
                                                                  :        (01) (02)
NACHMAN HELBRANS and MAYER ROSNER,                                :
                                                                  :     OPINION & ORDER
                     Defendants.                                  :
                                                                  :
------------------------------------------------------------------X

Nelson S. Román, United States District Judge:

The Government called Jane Doe[1] to testify at the trial against Nachman Helbrans and Mayer Rosner, which began on October 18, 2021. The Government alleges, *inter alia*, that the Defendants conspired to transport Jane Doe with an intent of reuniting her with her adult husband, Jacob Rosner, so that Jane and Jacob could resume their illicit sexual relationship. It is alleged that Jane Doe was forced to marry Jacob—Defendant Mayer Rosner's son—when she was thirteen and he was nineteen. From February 2021 to October 18, 2021, Nachman Helbrans and Mayer Rosner represented themselves *pro se*. Jacob Rosner, a Co-Defendant who is scheduled to go to trial in May 2022, has represented himself *pro se* since June 2021 and continues to do so. In the course of their self-representation, Nachman Helbrans and Mayer Rosner attempted to invoke spousal privilege on behalf of Jane Doe and Jacob. (*See, e.g.*, email from Jason Ser to the Court on behalf of *pro se* Defendant Mayer Rosner dated October 12, 2021 (averring that Jacob and Jane's marriage was "legitimate" and suggesting that a marital privilege applies); Oct. 13, 2021 Final Pre-Trial Conf. Tr. at 46-48 (Helbrans discussing his concern that the Government never informed

---

[1] Jane Doe is listed in the relevant charging documents as "Minor 1." (ECF Nos. 229 and 358.)

Jane of her right to privacy of marriage)). The Court also received a letter from Jacob Rosner, through his standby counsel, seeking to invoke the right of privacy of marriage to preclude certain testimony by Jane Doe.[2] (ECF No. 423.) For the reasons stated by the Court orally before Jane Doe's testimony on November 2, 2021, and for the reasons that follow, the spousal privilege is inapplicable to Jane Doe's testimony.

## BACKGROUND

Witness lists in this matter were due on October 12, 2021. (ECF No. 310.)

On October 8, 2021, Jane Doe filed an application under 18 U.S.C. § 3509. The Court ordered the parties to respond on or before October 12, 2021. The Government joined Jane Doe's application. *Pro se* Defendant Mayer Rosner sent an untimely response in which he averred that Jacob and Jane's marriage was "legitimate" and suggested that a marital privilege applies.

Also on October 8, 2021, the Government filed affidavits from experts on Mexican and Guatemalan law. (ECF No. 376.)

Defendants did not timely file a witness list. Instead, at the final pretrial conference on October 13, 2021, they stated their intention to call over 150 witnesses. (Tr. at 87-89.) The Court directed Defendants to file a witness list by October 14, 2021 setting forth the names of the individuals Defendants intend to call to testify and to state with particularity whether each individual is available and the relevance of the testimony. Defendants submitted a list of over 200 names, which appeared to include experts on Mexican and Guatemalan laws concerning marriage and sexual relations involving minors. Because questions of foreign law are questions of law to be decided by the Court, the Court issued an order stating that the Defendants could, as the

---

[2] This letter was originally filed at ECF No. 421 but was deleted from the docket so that a redacted version without Jane Doe's name could be filed instead. The re-filed document appears at ECF No. 423.

Government did, provide written affidavits from their foreign law experts on or before October 19, 2021. (ECF No. 398.) On October 18, 2021, Defendants Nachman Helbrans and Mayer Rosner's *pro se* status was revoked.

> The Court explained,
>
> [B]ased on defendants' request last week to invoke spousal privilege regarding Jane Doe's testimony, . . . if the Court concludes as a matter of law that there was not a legally recognizable marriage between Jane Doe and Jacob Rosner, neither defendants Jacob Rosner nor Jane Doe may invoke a spousal privilege related to the communications between Jane Doe and Jacob Rosner.
>
> Because these questions about marital and sexual activity laws in Mexico and Guatemala are questions for the Court to decide, the Court is inclined to resolve them both on written affidavits and legal experts rather than live testimony. If the defendants want the Court to consider the opinions of its experts on Mexican and Guatemalan law, defendants -- sit down -- defendants must provide the Court and the government with affidavits of their experts by no later than 5 p.m. on Tuesday, October 19, 2021. That is tomorrow.
>
> There was an order issued to that effect. Again, if I conclude that the alleged marriage between Jane Doe and Jacob Rosner was not legally recognizable, defendants may not argue at trial that they're entitled to a marriage defense or attempt to invoke spousal privilege. Any such arguments would only serve to confuse the jury.

(Tr. at 33-34.) The Court extended the deadline for Defendants to file expert affidavits on foreign law to October 23, 2021. (Tr. at 90-91.) Defendants did not submit any expert affidavits regarding Mexican or Guatemalan law.

On October 29, 2021, Jane's mother, Sara Helbrans testified out of the presence of the jury that members of Lev Tahor had reached out to her and Jane in the past week, including Jacob Rosner, who wanted Jane to invoke spousal privilege. (Tr at 945-48, 950-51). At sidebar with the parties, the Court stated

> My understanding of the law is that spousal privilege only applies if you have a legal marriage, and it is clear, at least from what I've heard so far and from the allegations, that we don't have a legal marriage. The marriage, throughout this proceeding based on all the pleadings and all the motions that have been made, has

> been referred to as a celestial marriage, all right. A celestial marriage is not a legal marriage.
>
> And also, there are three pertinent laws that have been at least discussed in this case: That's the law of Guatemala with respect to marriages, the law of Mexico with respect to marriages, New York law with respect to marriages. And it's my understanding that the facts of this case and the facts with respect to the testimony that's been proffered, that the marriage of Jane Doe to Jacob Rosner as a matter of law is not a legally recognized marriage. So while there's been discussions of a marital privilege, all right, the marital privilege only comes into play provided that there's a legally recognized marriage.
>
> . . . .
>
> The marital privileges apply provided that there's a marriage, a legally recognized marriage. You can't have the privilege if there's no marriage or legally recognized union of sorts, right? Because I know that states vary with respect to what -- you know, what constitutes a marriage. So in New York State, if -- the marriage is recognized only if it's between an individual of a certain age, right? In this case you have someone who was 12 or 13 years old at the time of the marriage, marrying an individual who is 19. My understanding of New York State law is that that marriage is not recognized, not a legal marriage. And there are, I think, a few exceptions with respect to minors and their ability to marry, provided that they seek consent of a family court, I believe. There's an exception with respect to a minor. Or a 17-year-old. All right. The marriage that we're talking about in this case has nothing to do with a 17-year-old. I think she was 12 or 13 . . . .
>
> Okay. 13. Still not 17. Still not an adult. All right. So you can't have a marital privilege if it's not a marriage as defined by law.

(Tr. at 965-66.) On November 2, 2021, hours before Jane Doe was scheduled to testify, the Court received a letter from *pro se* Defendant Jacob Rosner stating in relevant part:

> I, Jacob Rosner, invoke my constitutional right of privacy of marriage and I do not agree that the Government, or any other lawyer, should elicit any testimony from my wife regarding our privacy, communication, or acts and as I know that nobody, including the Government, Jane Doe's lawyers, and her own mother, did not inform Jane Doe that she has a right to invoke this same right not to testify regarding her private communication or acts with her husband.

(ECF No. 423.) The note also states that Jacob Rosner "wrote a letter to the court where [he] laid out and explained exactly how [his] marriage with [Jane Doe] is a legitimate marriage, which is recognized by New York Law, Mexican Law, and Guatemalan Law"

4

but was unable to translate the letter into English or provide it to the Court. Jacob Rosner's letter does not provide any explanation of how his marriage to Jane Doe is recognized by New York, Mexican, or Guatemalan laws.

Prior to Jane's testimony, the Court stated that it had received Jacob's letter and that the spousal privilege was inapplicable here.

## DISCUSSION

**I.    Marital Privilege**

Federal Rule of Evidence 501 provides:

The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court.

Fed. R. Evid. 501. Accordingly, where a party asserts a marital privilege, courts look to federal common law to determine the scope and applicability of the privilege. *United States v. Pugh*, 162 F. Supp. 3d 97, 101 (E.D.N.Y. 2016), *aff'd*, 937 F.3d 108 (2d Cir. 2019), *amended and superseded*, 945 F.3d 9 (2d Cir. 2019), and *aff'd*, 945 F.3d 9 (2d Cir. 2019).

Federal common law recognizes two types of marital privilege. The first is referred to as the "adverse spousal testimony" privilege, which permits an individual to refuse to testify adversely against his or her spouse. *See Trammel v. United States*, 445 U.S. 40, 53 (1980); *In re Rsrv. Fund Sec. & Derivative Litig.*, 275 F.R.D. 154, 157 (S.D.N.Y. 2011). "This privilege rests on the notion that a husband and wife should be able to trust each other completely, and that marriage is a sanctuary. The privilege is described as being 'broadly aimed at protecting marital harmony.'" *United States v. Premises Known as 281 Syosset Woodbury Rd.*, 71 F.3d 1067, 1070 (2d Cir. 1995) (quoting *In re Grand Jury Subpoena United States*, 755 F.2d 1022, 1027 (2d Cir. 1985), *vacated on other grounds sub nom. United States v. Koecher*, 475 U.S. 133 (1986)).

The second type of marital privilege, referred to as the "marital communications privilege," protects private and confidential communications between spouses from disclosure. *See Blau v. United States*, 340 U.S. 332, 333 (1951); *Premises Known as 281 Syosset Woodbury Rd.*, 71 F.3d at 1070. This type of privilege provides that "[c]ommunications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged." *Wolfle v. United States*, 291 U.S. 7, 14 (1934).

"Both privileges depend on the existence of a valid marriage, as determined by state law." *United States v. Fomichev*, 899 F.3d 766, 771 (9th Cir. 2018), *amended on denial of reh'g*, 909 F.3d 1078 (9th Cir. 2018) (quoting *United States v. Lustig*, 555 F.2d 737, 747 (9th Cir. 1977)). Because the marital privilege deprives fact-finders of potentially useful information, the party seeking to invoke the privilege bears the burden of establishing that there existed a valid marriage at the time of the communication. *See United States v. Etkin*, No. 07-CR-913(KMK), 2008 WL 482281, at *2 (S.D.N.Y. Feb. 20, 2008) (quoting *In re Witness Before the Grand Jury*, 791 F.2d 234, 237 (2d Cir. 1986)); *see also United States v. Hamilton*, 19 F.3d 350, 354 (7th Cir. 1994) ("The marital communications privilege is in derogation of the truth, as are other evidentiary privileges; and therefore the 'valid marriage' requirement must be interpreted strictly." (quoting *United States v. Acker*, 52 F.3d 509, 514–15 (4th Cir. 1995)).

Under the doctrine of comity, the general rule is that the validity of a marriage is determined by the law of the jurisdiction where it is celebrated. *See* 52 Am. Jur. 2d Marriage § 65 (collecting cases); *see also Lewis v. N.Y. Dep't of Civ. Serv.*, 872 N.Y.S.2d 578, 582 (3d Dep't 2009), *aff'd sub nom. Godfrey v. Spano*, 13 N.Y.3d 358 (N.Y. 2009) ("While the type of marriage involved here is relatively novel, there are longstanding rules of law that have guided our courts

in determining whether persons validly married elsewhere will be considered married in New York.").

"Issues of foreign law are questions of law, but in deciding such issues a court may consider any relevant material or source—including testimony—without regard to the Federal Rules of Evidence." Fed. R. Crim. P. 26.1.

## II.   **Application**

The fundamental prerequisite to both of the marital privileges is "the existence of a valid marriage, as determined by . . . law." *Fomichev*, 899 F.3d at 771. Jacob Rosner contends that his marriage to Jane is valid under the laws of New York, Mexico, and Guatemala. (ECF No. 423.) Here, the alleged marriage occurred in Guatemala.[3] Accordingly, if the marriage is valid under Guatemalan law, then Jacob Rosner could assert his marital communications privilege and preclude Jane Doe from testifying regarded matters within the marriage. However, the Court has been given no reason to believe that Guatemalan law recognizes Jane and Jacob's marriage.

The Court previously held that "[u]nless the Defendants present competent evidence to the contrary, the Court is inclined to hold as a matter of law that child marriage is prohibited in Guatemala and to instruct the jury accordingly." *United States of America v. Nachman Helbrans & Mayer Rosner*, No. S2 19-CR-497 (NSR) (01) (02), 2021 WL 4778525, at *33 (S.D.N.Y. Oct. 12, 2021). As previously stated, Defendants have not filed any expert affidavits regarding Guatemalan law or otherwise explained to the Court how Guatemalan law recognizes the marriage between Jane and Jacob.

---

[3] While the alleged marriage occurred in Guatemala, where it was not recognized by law, the record before the Court indicates that it would not have been recognized by the laws of New York. *See United States v. Helbrans*, No. S2 19-CR-497 (NSR) (01) (02), 2021 WL 4778525, at *32 (S.D.N.Y. Oct. 12, 2021) (holding that that since 2017, "New York no longer allows individuals under seventeen years of age to marry").

Because no party has provided the Court with cognizable evidence that Guatemalan law recognized Jane and Jacob's marriage, the Court must conclude that the marriage was not legally valid, and, therefore, that no marital privileges preclude Jane Doe from testifying regarding communications between Jane and Jacob or against Jacob and his alleged coconspirators.

Even if the Court had been presented with any law recognizing Jane and Jacob's marriage, precluding Jane's testimony would be inconsistent with the purpose of the marital privilege and other public policy interests. Some circuit courts have held that federal common law recognizes an exception, based on public policy interests, that the marital privilege "should not apply to statements relating to a crime where a spouse or a spouse's children are the victims." *United States v. White*, 974 F.2d 1135, 1138 (9th Cir. 1992); *United States v. Allery*, 526 F.2d 1362, 1366–67 (8th Cir. 1975). Indeed, the Court agrees with these courts that "[p]rotecting threats against a spouse or the spouse's children is inconsistent with the purposes of the marital communications privilege: promoting confidential communications between spouses in order to foster marital harmony." *White*, 974 F.2d at 1138; *see also Allery*, 526 F.2d at 1366 ("We recognize that the general policy behind the husband-wife privilege of fostering family peace retains vitality today as it did when it was first created. But, we also note that a serious crime against a child is an offense against that family harmony and to society as well."). If anything, this exception seems more than applicable to the facts of the instant case, in which Jane was allegedly both the spouse *and* child who was victimized by Jacob Rosner and his coconspirators including Defendants Nachman Helbrans and Mayer Rosner.

## CONCLUSION

For the foregoing reasons, and as orally held, spousal privilege does not bar Jane Doe's testimony because no party has provided the Court with any reason to believe that the marriage was recognized by law.

Dated: November 4, 2021
       White Plains, NY

SO ORDERED:

_____
HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE