```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __02/22/2022__
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -against-

NACHMAN HELBRANS and MAYER ROSNER,

                    Defendants.

S3 19-CR-497 (NSR)
(01) (02)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

This case involves the kidnapping of two minors ("the Minors") from their Mother in New York by members of Lev Tahor, an insular religious community currently based in Guatemala, of which the Mother and the Minors were previously a part. Defendants Nachman Helbrans and Mayer Rosner are members of Lev Tahor whom the Government charged in a six-count superseding indictment for their involvement in the kidnapping of the Minors.[1] (ECF No. 358.)

In February 2021, following separate *Faretta* hearings with Defendants, the Court granted their applications for *pro se* representation and appointed their CJA counsel to serve as standby counsel. (ECF Nos. 183, 194.) Defendants represented themselves *pro se* until October 18, 2021, when the Court revoked their *pro se* status on the eve of trial based on Defendants' obstructionist conduct and purported inability to understand the charges against them. On November 10, 2021, a jury convicted both Defendants of all charges the Government brought against them.[2] Presently

---

[1] The Government also charged Aron Rosner (03), Jacob Rosner (04), Matityau Moshe Malka (05), Yakov Weingarten (06), Shmiel Weingarten (07), Yoil Weingarten (08), and Mordechay Malka (09). The Court has set trial dates for Jacob Rosner and Mordechay Malka to commence in May 2022, and for Aron Rosner and Matityau Moshe Malka in June 2022. The Weingartens have not appeared before this Court; the Court understands that the Weingartens are currently in custody in Guatemala awaiting extradition to the United States in connection with this matter.

Because the opinion herein only applies to Defendants Nachman Helbrans (01) and Mayer Rosner (02), any reference to "Defendants" in this opinion is to the latter two. Further, any reference to "Rosner" in this opinion is to Mayer Rosner.

[2] Specifically, the jury convicted Helbrans of one count of conspiracy to transport a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a); one count of conspiracy to travel with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b); one count of conspiracy to kidnap, unlawfully

pending before the Court is Defendants' renewed request to proceed *pro se* for all sentencing and post-trial matters under *Faretta v. California*, 422 U.S. 806 (1975). (ECF Nos. 452 & 454.) The Government opposes such request. (ECF No. 457.) For the following reasons, the Court DENIES Defendants' request.

## STANDARD

A defendant has a right under the Sixth Amendment to represent himself without assistance of counsel if that decision is made intelligently and knowingly with full awareness of the right to counsel and the consequences of its waiver. *See Faretta v. California*, 422 U.S. 806, 835–36 (1975); *United States v. Fore*, 169 F.3d 104, 108 (2d Cir. 1999); *United States v. Culbertson*, 670 F.3d 183, 193 (2d Cir. 2012). Whether a defendant's election to proceed *pro se* is "knowing and intelligent depends on the particular facts and circumstances of the case and the characteristics of the defendant himself." *Fore*, 169 F.3d at 108.

"[T]he right to self-representation is not without limits . . . [and] is not a license to abuse the dignity of the courtroom." *Clark v. Perez*, 510 F.3d 382, 395 (2d Cir. 2008) (quotation marks omitted). "A trial court may deny the right to act *pro se* where the defendant 'deliberately engages in serious and obstructionist misconduct,' . . . or is not 'able and willing to abide by the rules of procedure and courtroom protocol.'" *Clark*, 510 F.3d at 395 (quoting *Faretta*, 422 U.S. 806 at 834 n.46; *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984)); *see also Faretta*, 422 U.S. at 834 n.46 ("[T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. . . . The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural

---

use a means of identification and enter by false pretenses the secure area of an airport, in violation of 18 U.S.C. § 371; and three counts of international parental kidnapping, in violation of 18 U.S.C. § 1204(a). The jury convicted Rosner of the same counts, except that he was only charged with and convicted of two counts of international parental kidnapping instead of three.

and substantive law.").

"[A] judge may use willingness and ability to abide by courtroom protocol as prerequisites for accepting a defendant's waiver of his right to counsel." *Davis v. Grant*, 532 F.3d 132, 143 (2d Cir. 2008); *see also United States v. Hausa*, 922 F.3d 129, 135–36 (2d Cir.), *cert. denied*, 140 S. Ct. 208 (2019). This is because "a trial-court judge confronted with a defendant who both continues to engage in serious misconduct and insists upon his right to represent himself is placed on the horns of a serious dilemma." *Davis*, 532 F.3d at 143. "The judge must choose between two imperfect solutions—whether to allow the defendant to remain in the courtroom despite persistent misbehavior or to revoke the defendant's right to represent himself." *Id.*

## DISCUSSION

The Government argues that the Court should deny Defendants' renewed request for *pro se* status based on their incessant obstructive conduct and unwavering position that they do not understand the charges against them—which the Government even avers may not be credible. (ECF No. 457 at 2–5.) After due consideration, the Court concludes that Defendant's renewed request must be denied on the following three independent grounds or a combination thereof: (1) Defendants' obstructionist behavior; (2) Defendants' inability to understand the charges against them; and (3) Defendants' multiple attempts for improper hybrid representation.

## I.   Obstructionist Behavior

The Court agrees with the Government that Defendants have repeatedly engaged in dilatory, obstructive, and defiant behavior during the time they represented themselves *pro se*. From the start, Defendants missed several filing deadlines, including those for pretrial motions, motions *in limine*, requests to charge, witnesses lists, a proposed verdict list, and proposed voir dire. Whenever Defendants asked for extensions, if at all, they only did so last minute. For example, on July 8, 2021, the Court granted Defendants leave to file non-duplicative supplemental

pretrial motions (*i.e.*, motions that they or their previous counsel had not already filed) and issued a briefing schedule affording Defendants thirty days to file their moving papers. (ECF No. 291.) The Court also advised Defendants that if they were unable to meet any of the deadlines, that they must inform the Court in advance which deadlines they cannot meet, the reason, and how much additional time they individually would need to file their respective motions. (*Id.*)

But then 2-3 days after the deadline expired on August 9, 2021, Defendants each filed motions through their standby counsel requesting an undefined extension of the briefing deadlines, contending that timely filing their motions was "impossible" because they faced "insurmountable difficulties . . . in researching, drafting, reviewing, editing, printing[,] and filing these motions" due to the "conscious decisions and acts engaged by both [G]overnment counsel and the Westchester Correctional Center." (ECF Nos. 306 & 307.) In their respective motions, Defendants also failed to specify which motions they intended to file and were unable to timely file. Despite the Court subsequently extending the deadline to August 31, 2021 and asking Defendants to confer with standby counsel and create a list they individually intended to file by August 18, 2021, Defendants filed their list of anticipated motions two days after the deadline expired. (ECF Nos. 317 & 318.) Moreover, it was until September 11, 2021, ten days after the motions-deadline expired, when Helbrans filed his motion to disqualify the undersigned—a motion he failed to include in his list of anticipated motions. (ECF Nos. 338 & 339.)

Even when they complied with the filing deadlines, Defendants failed to supply materials in a usable format and consistently filed sensitive personal information about the Minors on the public docket, despite the protective order issued in this case. (*See* ECF No. 285.) For example, they submitted over 3,100 pages of materials separated only in eleven tabs, resulting in thousands of pages of documents—including the Minors' medical records—from multiple sources being

grouped into a single exhibit. (*See* ECF No. 355 (Defendants' exhibits in support of their motions in *limine*).)

Throughout their *pro se* status, Defendants also filed motions without any basis in law or fact, as well as lodged baseless accusations against the motivations and actions of the undersigned, the prosecuting team, and even the United States Marshal Service.[3] (*See* ECF No. 338 & 339; *see also* ECF No. 353 at 3 ("These tactics from Judge Román and from the government violated many constitutional rights of the defendants . . . . To cover up these violations, Judge Román issue [sic] at the request of the government) an unrealistic trial schedule[.]"); ECF No. 366 at 2 ("[W]e were misleaded [sic] by the Chambers with empty promises and sham orders in writing and orally that was not in the plan ever to materialize them . . . .'"); *id.* (accusing the Government and the Court of having "malicious motivation" and of lying and manipulating the record).)

During hearings, Defendants also repeatedly refused to provide direct answers to the Court's inquiries, no matter how simple or straightforward, and regardless of whether these inquiries related to mere administrative issues. Instead, Defendants declined to provide direct answers and attempted to negotiate or place conditions on the Court's questions and directions. For example, during a conference on September 13, 2021, the following exchange occurred between the Court and Helbrans:

---

[3] On October 18, 2021, before beginning with jury selection, the Court informed Defendants that the U.S. Marshals had recovered a recording device and a cell phone sewn into the fabric of Defendants' clothing for trial. The Marshals detected the contraband items after running the clothing through the magnetometer after it was dropped off the Friday before. The Court informed Defendants that it did not know who dropped off the clothing for them and did not know whether Defendants themselves asked for the recording device or cellphone, or even if either of them were aware of the circumstances. But the Court warned Defendants that it was a federal offense to provide, procure, or to conspire with anyone to procure such contraband.

Immediately after the Court's warning, Helbrans attempted to explain that the individual who dropped off the clothes, a "Mr. Goldman", had placed such devices on the magnetometer merely by mistake. The Court interrupted Helbrans and advised him not to say anything further before speaking to standby counsel because the U.S. Marshals had found the devices *sewn into the fabric of the clothing*, indicating that someone deliberately placed them in such way to avoid detection. In response, Helbrans replied among other things: "It's a lie"; "A clear lie. On the record, your Honor. It's a clear lie on the record."

[THE COURT:] The Court has also received some correspondence from the defendants, specifically Mr. Helbrans and Mr. Mayer Rosner, that they seek to file further motions, and they are asking the Court postpone the trial date. Mr. Nachman Helbrans, did I just summarize your request?

DEFENDANT HELBRANS: No, Your Honor.

THE COURT: You are not asking me to permit you to file additional motions prior to trial?

DEFENDANT HELBRANS: I did ask to permit to file additional motions, but I did not directly ask to postpone the trial.

THE COURT: Okay. You are not asking to postpone the trial. You are ready to - - then what you are articulating to the Court, then, is that you are ready to proceed to trial in October?

DEFENDANT HELBRANS: No, Your Honor. I am not ready to go to trial because I want to prepare my motions, but under conditions - -

THE COURT: Mr. Helbrans, you are talking out of both sides of your mouth right now. All right. Do you want additional time to file motions?

DEFENDANT HELBRANS: Your Honor - -

THE COURT: Pretrial motions?

DEFENDANT HELBRANS: Your Honor, if with the condition that I have now, it won't make a big difference that I have one month more or one year more or ten years more. I will never be able to prepare my pretrial motions because I have people with details what I need to prepare the motion. I have people who have details what the situation the jail. That motion that - - the affidavit of the deputy commissioner that the government - - that he signed - - that the deputy commissioner signed under penalty of perjury, and the government attach it, I said it's lie after lie after lie. Nothing there is factual and substantial. Everyone can testify on this. I cannot understand how a deputy commissioner can say such lies under penalty of perjury, and the government is more than happy to attach it. So - -

THE COURT: All right. I am going to ask the questions again because you are going off tangents. Okay? You are talking about affidavits that were submitted perhaps in support of a particular motion or in opposition of a particular motion or in opposition to a motion that you filed. All right. I thought in your correspondence you and Mr. Rosner wanted to postpone the trial because you had intentions of filing additional motions, and that you represented to the Court that you had an insufficient amount of time to do so. And that the time constraints that I provided

6

were not sufficient. So I want the record to be clear. Number one, your intent to file additional motions.

DEFENDANT HELBRANS: Only if I have an opportunity to file it. With the condition in the jail if I can find - -

THE COURT: I just need a straight answer. It's either yes, I would like to file additional motions, or no, I do not wish to file additional motions.

DEFENDANT HELBRANS: Your Honor, I wish, but I cannot.

(ECF No. 347 at 18:16–20:21.)

Similarly, during the same conference, the following exchange occurred between the Court

and Rosner:

[THE COURT:] Are you also seeking or making an application to postpone the October trial?

DEFENDANT ROSNER: I want to say the same thing. That please give me a chance to explain something to Your Honor. I really would appreciate it. The government have explained to the Court that they give a list of items, and how we can make legal decision in the jail, and how we can do so many things. And I see that the Court accepted blind like whatever the government says, this is the fact.

I have on my letter that was filed on August 20th that the government said that the jail was ready to testify in court that all the list of the jail have given to the government is real, and I said clearly there that I am ready to testify to the Court that all of the things that the jail have sent to the government is lies and manipulation. It's clearly. For example I would like to give Your Honor an extreme example. The deputy commissioner said on his affidavit that we have typewriters in our cells, which is just a lie. I can give here that CO, the officer - -

. . .

THE COURT: So I will ask the question again: Are you seeking to postpone the trial, which is currently scheduled for October?

(*Id.* at 23:14–25:2.)

In the end, this kind of obstructionist conduct by Defendants led the Court to revoke their

*pro se* status on October 18, 2021, right before jury selection:

I believe the Court has no choice but to revoke your *pro se* status, both Mr. Helbrans' *pro se* status and Mr. Rosner's *pro se* status. I believe, over the course of representing yourselves, you've demonstrated disrespect for the Court. You've refused to abide by all of the deadlines that I've set. You disregarded all court procedures and so forth. I've issued rulings with respect to—that are relevant to this proceeding with respect to what type of evidence can be presented or is relevant or not relevant, and despite those rulings, you continue to attempt to proffer evidence or make motions for the introduction of certain types of evidence that goes contrary to the rulings I've already made. You have made attempts, in the Court's view, to delay these proceedings, and you've made it very difficult for the Court to conduct orderly proceedings, individual conferences and so forth . . . Again, you've avoided answering questions - - actually, quite simple questions - - and you've conflated a host of different issues in this matter, and I believe this is all towards an eye to delay and frustrate the orderly administration of justice. And so, for the reasons articulated on the record and for those that are also outline by the government, and more which I believe the record will reflect, the Court has decided to revoke the *pro se* status of Mr. Helbrans and Mr. Rosner.

(10/18/21 Conference Tr. 57:1–58:1.)

Indeed, as the Government points out, a review of the docket for Defendants' appeal before Second Circuit Court of Appeals reveals that, to this day, they continue to engage in similar dilatory and obstructionist conduct as *pro se* appellants. Just two weeks ago, on January 31, 2022, Rosner filed over 2,000 pages of documents on the Second Circuit docket for his case, including materials containing sensitive information about the Minors. (*See United States v. Rosner*, 21-198 (2d Cir.), ECF Nos. 57–67.[4]) Four days later, Rosner also filed a brief—joined by Helbrans—in which they made several baseless accusations against the prosecution team, alleging, among other things, that the Government is "motivated by anti-Semitism" and that both the Government and this Court have committed "hundreds of constitutional and human rights violations" against them, showing "consistent obvious anti-Semitic behavior." (*See United States v. Rosner*, 21-198 (2d Cir.), ECF No. 71 at 6.) They further accuse the Government and this Court of abusing their power

---

[4] The Second Circuit subsequently granted the Government's motion to seal these exhibits. (*See United States v. Rosner*, 21-198 (2d Cir.), ECF No. 74.)

and committing perjury to advance a "religious prosecution" and "smear campaign" against them. (*Id* at 6–7.)[5]

Therefore, in view of the totality of Defendants' consistent and continuous obstructive, dilatory behavior throughout their *pro se* status, together with their unwillingness to comply with the Court's rules and to conduct themselves appropriately, the Court concludes that the record supports denying Defendants' renewed request to represent themselves for purposes of post-trial proceedings and sentencing. *See e.g.*, *United States v. Mabie*, 663 F.3d 322, 326, 328 (8th Cir. 2011) (affirming revocation of defendant's pro se status based on the "totality of Mabie's disruptive behavior," which included the defendant "pursuing theories that will consistently be disallowed," "becom[ing] openly hostile and inattentive to rulings and objections," repeatedly interrupting the court and the prosecutor, accusing "the court of lying," and demonstrating "a lack of decorum"); *United States v. Mosley*, 607 F.3d 555, 558–59 (8th Cir. 2010) (affirming revocation of pro se status based on "obstreperous conduct" (which included filing unintelligible and frivolous motions, making claims unrelated to the case, and refusing to answer the court's direction questions) that "interfered with pretrial proceedings and delayed the trial," particularly given "[t]here was good cause to believe that [the defendant] would continue to disrupt the proceedings if the court permitted him to resume self-representation"); *United States v. West*, 877 F.2d 281, 287 (4th Cir. 1988) (affirming revocation of pro se status where defendant "directly attacked the

---

[5] Additionally, on November 10, 2021, the day of the verdict, the Government brought to the Court's attention that a recently created public website was displaying unredacted copies of confidential documents produced through discovery, in violation of the Court's protective order. While there is no indication that Defendants were involved in this disclosure in violation the protective order, the only parties with access to such documents included the Government, standby counsel, and *pro se* Defendants. (*See* ECF No. 285 ("6. Disclosure Material shall not be disclosed to any foreign persons or entities, or to any members of Lev Tahor (even if such persons or entities would otherwise constitute Designated Persons), with e exception of the non-fugitive defendants, and may not be transported or transmitted outside of the United States for any purpose.").)

district court's integrity and dignity by characterizing it as the 'home team' on the side of the government" and failed to act "in a manner befitting an officer of the court").

## II.    Inability to Understand the Charges Against Them

The Court further agrees with the Government that another ground supporting denial of Defendants' request is their inability to understand the charges against them. It is well-established that a defendant's failure to understand the charges lodged against him provides a basis for denying that defendant's right to proceed *pro se*. *See United States v. Gougher*, F. App'x 231, 234 (9th Cir. 2020) (affirming denial of request to proceed *pro se* where defendant "repeatedly insisted, and continued to insist, that he did not understand the charges against him" because "[a] district judge cannot be expected to ensure that a defendant understands the nature of the charges against him when the defendant repeatedly and consistently refuses to acknowledge that he understands them"); *United States v. Kerr*, 752 F.3d 206, 216 (2d Cir. 2014) (affirming district court waiver of right to counsel after finding that the defendant understood the nature of the charges); *United States v. Van Hoesen*, 450 F. App'x 57, 62 (2d Cir. 2011) (same); *White v. United States*, 13 Civ. 64, 2014 WL 2002249, *8 (E.D. Va. May 13, 2014) (rejecting 2255 habeas petition challenging magistrate judge's appointment of counsel over defendant's objection where defendant at arraignment "repeatedly stated on the record that he did *not* understand the criminal charges or the associated punishments"); *see also Austin v. Davis*, 876 F.3d 757, 783 (5th Cir. 2017) (waiver of right to counsel valid in part due to confirmation that defendant knew and understood charges); *United States v. Thomas*, 833 F.3d 785, 793 (7th Cir. 2016) (same); *United States v. Williamson*, 859 F.3d 843, 863 (10th Cir. 2017) (same).

Here, throughout the course of their *pro se* status, Defendants expressly affirmed that they did not understand the charges against them. (*See* ECF No. 270 at 8:22–11:12 (Rosner arraignment for one of the superseding indictments); ECF No. 371 ("[W]e notified the courts on the most clear

terms possible that we do not understand the charges against us, not because we do not understand English and not because we can't read legal documents . . . rather it's because the superseding indictment was so constructed to confuse any reader from understanding what the charges are.").) Most significantly, during their arraignment on the most recent superseding indictment, the following exchange occurred between the Court and Defendants:

> THE COURT: Okay. And with respect to the charges as they're set forth in the Superseding Indictment, Mr. Helbrans, how do you plead?
>
> DEFENDANT HELBRANS: I plead not understanding.
>
> THE COURT: All right. Well, it's either a guilty plea or a not guilty plea.
>
> DEFENDANT HELBRANS: Your Honor, I cannot enter a plea I could not understand it. I'm not understanding what the charges are.
>
> THE COURT: Okay. Mr. Rosner, how do you wish to enter a plea with respect to the Superseding Indictment?
>
> DEFENDANT ROSNER: Not understanding.

(10/13/21 Conference Tr. 112:15–113:1.) After the exchange, the Court asked the Government to address by letter whether Defendants should continue representation themselves because first, they had repeatedly failed to abide by the Court's rules and motion deadlines, and second, they represented to the Court that they do not understand the charges against them. (*See id.* at 113:2– 115:15.) The next day, the Government responded that the Court should make additional inquiries regarding Defendants' understanding of the charges against them, and only permit them to proceed *pro se* if they can clearly demonstrate a sufficient understanding. (ECF No. 392.) Three days later, after asking Defendants once again whether they understood each of the charges against them, the Court revoked Defendants' *pro se* status on the eve of trial after they deliberately avoided to provide an answer. (*See generally* 10/18/21 Conference Tr.)

Defendants' failure to understand the charges against them would by itself be sufficient to deny their renewed request to proceed *pro se*. But the Government further avers that the record also strongly suggests that Defendants' inability to understand the charges against them is not credible. Specifically, the Governments points to Defendants' multiple filings where they raised specific legal and factual arguments challenging the charges against them. (*See, e.g.*, ECF No. 318 (listing anticipated pretrial motions, including a "motion to dismiss because transporting a minor under 2424(a) to commit a travel crime 2423(c) is not a crime; in other words (a) and (c) cannot be combined."); ECF No. 382 at 8–13 (discussing case law relating to kidnapping charges under 18 U.S.C. § 1201 and analogizing the charges in this case under 18 U.S.C. § 1204).)

After reviewing such filings, the Court agrees with the Government that the record does strongly suggest that "rather than failing to understand the charges against them, [Defendants] are stubbornly refusing to answer the Court's questions" on the matter. (ECF No. 457.) As such, it logically follows that, even if Defendants were to expressly affirm under oath that *now* they do understand the charges against them, the record still strongly suggests that Defendants' previous assertions about not understanding the charges against them was not credible. Such conduct would be further evidence of Defendants' dilatory, obstructionist conduct—which as mentioned above, is already sufficient to deny their renewed request to represent themselves.

## III.    Hybrid Representation

And finally, the Court also concludes that Defendants' multiple attempts to circumvent *Faretta* by proceeding with improper hybrid representation provides an additional ground on which to deny their renewed request.

"Although criminal defendants possess both the right to appear *pro se* and to appointed counsel, ordinarily those rights cannot both be exercised at the same time." *Ennis v. LeFevre*, 560 F.2d 1072 (2d Cir. 1977), *cert. denied*, 435 U.S. 976 (1978). "[A] criminal defendant has no

constitutional or statutory right to represent himself as co-counsel with his own attorney." *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989) (citing *Ennis*, 560 F.2d at 1075).

Soon after granting their *pro se* status, Defendants asked the Court for permission to file joint motions as *pro se* defendants in this matter, which the Court denied because "they are not licensed attorneys" and they "may not speak for, advocate on behalf of, or file motions on behalf of or jointly with any other Co-Defendant." (ECF No. 219.) Then, on March 26, 2021, the Court reminded Defendants again that they could only individually speak on their own behalf and file and not speak or advocate on behalf of the other *pro se* defendants.

Notwithstanding, Defendants have tried to circumvent their *pro se* status and speak on behalf of the other *pro se* defendants or have others speak on their behalf. (*See, e.g.*, ECF No. 397 at 30-31 (Helbrans speaking about how he and the other co-defendants are all of the same mind and request a conference with the Court).) Not only then, but even after the Court revoked their *pro se* status and appointed counsel, Defendants continue to try to circumvent their appointed counsel.

For example, throughout the jury trial, a third party[6] submitted motions and other requests via email to the Court purportedly on behalf of Defendants. Among these included a last-minute motion for reconsideration supposedly on behalf of Jacob Rosner raising his purported spousal privilege[7] in an attempt to prevent one of the Minors—Jane Doe—from testifying against Defendants. (*See* ECF No. 434.) Then, on November 24, 2021, about two weeks after Defendants' conviction, the Court received yet another email from the same third party with another request.

---

[6] The third party's email address indicates that the sender's name is "Uriel Yosef Goldman," which ostensibly could be the same "Mr. Goldman" to whom Helbrans referred when talking about the incident concerning the devices sewn into the fabric of the clothing.

[7] In an opinion and order issued on November 4, 2021, the Court held that the spousal privilege did not bar Jane Doe's testimony because nothing on the record supported a finding that the marriage between Jacob Rosner and Jane Doe was legally recognizable. (ECF No. 427.)

However, the Court declined to entertain this request purportedly submitted on Defendants' behalf because Defendants had appointed counsel. (*See* ECF No. 436 ("Any of Defendants' requests to the Court must be submitted through their legal counsel, not through other third parties nor filed *pro se*." (citing *United States v. Tracy* 989, F.2d 1279, 1285 (1st Cir. 1993) ("A district court enjoys wide latitude in managing its docket and can require represented parties to present motions through counsel."). Otherwise, Defendants would benefit from having hybrid representation by filing motions *pro se*, through the third party, as well as through counsel.

If anything, by their instant motion, the record strongly suggests that Defendants are once again trying to circumvent the Court's rulings to obtain hybrid representation. On November 10, 2021, the day of the verdict, the Court issued the briefing schedule for Defendants' post-trial motions under Federal Rules of Criminal Procedure 29 and 33: moving papers due on December 28, 2021, opposing papers on February 14, 2022, and reply papers on March 1, 2022. Defense counsel timely filed their clients' respective post-trial motions on November 22 and December 28, 2021. (*See* ECF Nos. 435 (Helbrans) & 443 (Rosner)). But now, in their instant motion, Defendants seek to resume their *pro se* status "*for all sentencing and post-trial matters*." (ECF Nos. 452 & 454 (emphasis added).) Hence, if the Court were to grant their request and Defendants resumed their *pro se* status, the Court would have to rule on their post-trial motions by reviewing both the memoranda in support, prepared and filed by counsel, and the replies that Defendants would file *pro se* by March 1, 2022. Indeed, the Court already dealt with Defendants' similar tactics during the pretrial motion-practice, which as described in more detail above, Defendants exploited to engage in dilatory, obstructive conduct.

Therefore, the Court concludes that the record strongly supports denying Defendants' renewed request to represent themselves for purposes of post-trial proceedings and sentencing on

the following three independent grounds or a combination thereof: (1) Defendants' dilatory, obstructive conduct; (2) Defendants' inability to understand the charges against them; and (3) Defendants' multiple attempts for improper hybrid representation.

## CONCLUSION

For the foregoing reasons, Defendants' renewed request for *pro se* status is DENIED. The Clerk of Court is directed to terminate the motion at ECF No. 452.

Dated: February 22, 2022
      White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

15