```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/08/2022
```

UNITED STATES OF AMERICA,

   -against-

MAYER ROSNER,

                              Defendant.

S3 19-CR-497 (NSR) (02)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

On September 28, 2021, the Government filed the S3 Superseding Indictment charging Defendant Mayer Rosner and other members of Lev Tahor[1] with various counts related to the kidnapping of two minors—John Doe and Jane Doe—from their Mother in New York. As relevant here, Count Two charges Defendant, "and others known and unknown," with conspiring to have one of the co-conspirators—Jacob Rosner (Defendant's son)—travel in interstate commerce with intent to engage in illicit sexual conduct with Jane Doe, in violation of 18 U.S.C. § 2423(b) and (e). On November 10, 2021, a jury convicted Defendant of all charges the Government brought against him,[2] including Count Two.

Presently pending before the Court is Defendant's motion for judgment of acquittal, in which he argues that "Count Two must be dismissed as a matter of law" because the Government failed to prove (or even allege) that Jacob intended to engage in sexual conduct, which he contends

---

[1] The Government also charged Nachman Helbrans (01), Aron Rosner (03), Jacob Rosner (04), Matityau Moshe Malka (05), Yakov Weingarten (06), Shmiel Weingarten (07), Yoil Weingarten (08), and Mordechay Malka (09). Nachman Helbrans was tried and convicted alongside Defendant in October 2021. The Court has set trial dates for Jacob Rosner and Mordechay Malka to commence in May 2022, and for Aron Rosner and Matityau Moshe Malka in June 2022. The Weingartens have not appeared before this Court; the Court understands that the Weingartens are currently in custody in Guatemala awaiting extradition to the United States in connection with this matter.

[2] Specifically, the jury convicted Defendant of: one count of conspiracy to transport a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a); one count of conspiracy to travel with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b); one count of conspiracy to kidnap, unlawfully use a means of identification and enter by false pretenses the secure area of an airport, in violation of 18 U.S.C. § 371; and two counts of international parental kidnapping, in violation of 18 U.S.C. § 1204(a).

is a necessary element for any conviction under 18 U.S.C. § 2423(b) and (e) of the conspirators charged. ("Motion" at 2, ECF No. 443.) The Government filed an opposition contending that, under basic principles of conspiracy law, Defendant's motion is meritless because "[i]t is sufficient to prove that the conspirators agreed that the underlying crime be committed by a member of the conspiracy who was capable of committing it." ("Response in Opposition" at 5, ECF No. 458 (citations omitted).) For the following reasons, the Court DENIES Defendant's motion.

**STANDARD**

After a jury returns a guilty verdict, Federal Rule of Criminal Procedure 29(c) allows a district court to, upon the defendant's motion, "set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29. Courts evaluating a motion under Rule 29 should "review all of the evidence presented at trial in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." *United States v. Walker,* 191 F.3d 326, 333 (2d Cir. 1999) (internal quotation marks omitted); *United States v. Martinez*, 54 F.3d 1040, 1042 (2d Cir. 1995) (same). Courts must uphold a jury verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011)  (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original)); *accord United States v. Reyes*, 302 F.3d 48, 52 (2d Cir. 2002). In a close case, where "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the jury decide the matter." *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000) (quoting *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999)) (internal quotation marks and brackets omitted). "'A judgment of acquittal' is warranted 'only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could

2

find guilt beyond a reasonable doubt.'" *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (quoting *United States v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004)).

The burden is on the defendant to make this showing, and the Second Circuit has repeatedly described that burden as "very heavy." *United States v. Desena*, 287 F.3d 170, 177 (2d Cir. 2002), *abrogated on other grounds*; *see also United States v. Caracappa*, 614 F.3d 30, 43 (2d Cir. 2010).

"[T]he task of choosing among competing, permissible inferences is for the [jury], not for the reviewing court." *United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001). Moreover, the Court must analyze the pieces of evidence "not in isolation but in conjunction," *United States v. Matthews*, 20 F.3d 538, 548 (2d Cir. 1994), *abrogated on other grounds*; *see Autuori*, 212 F.3d at 114, and must apply the sufficiency test "to the totality of the government's case and not to each element, as each fact may gain color from others," *Guadagna*, 183 F.3d at 130; *Reyes*, 302 F.3d at 53 ("we consider the evidence as a whole"); *Persico*, 645 F.3d at 104. The Court must also "credit[] every inference that the jury might have drawn in favor of the government," *United States v. Temple*, 447 F.3d 130, 137 (2d Cir. 2006) (internal quotation marks omitted), because "the task of choosing among competing, permissible inferences is for the fact-finder, not for the reviewing court," *United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001). "These standards apply whether the evidence being reviewed is direct or circumstantial." *Persico*, 645 F.3d at 105.

Particularly relevant here, the deference accorded to the jury's verdict "is especially important when reviewing a conviction of conspiracy . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *United States v. Pitre*, 960 F.2d 1112, 1121 (2d Cir. 1992) (internal quotation marks omitted); *see also United States v. Amato*, 15 F.3d 230, 235 (2d Cir. 1994). "A conspiracy need not be shown by proof of an explicit agreement but can be

established by showing that the parties have a tacit understanding to carry out the prohibited conduct," *United States v. Samaria*, 239 F.3d 228, 234 (2d Cir. 2001), *overruled on other grounds by United States v. Huezo*, 546 F.3d 174, 180 n.2 (2d Cir. 2008), and can be shown based on circumstantial evidence alone, *United States v. Gordon*, 987 F.2d 902, 906–07 (2d Cir. 1993); *United States v. Miranda Ortiz*, 926 F.2d 172, 176 (2d Cir. 1991) ("Membership in the conspiracy may be proved entirely by circumstantial evidence."). For example, a defendant's "knowing and willing participation in a conspiracy may be inferred from . . . [his] presence at critical stages of the conspiracy that could not be explained by happenstance, or a lack of surprise when discussing the conspiracy with others." *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 113 (2d Cir. 2008).

## DISCUSSION

By his motion, Defendant argues that, for a conviction under 18 U.S.C. § 2423(b) and (e), the Government

> must prove that the defendant himself traveled in foreign commerce with the purpose of engaging in illicit sexual conduct . . . [because] the plain language of § 2423(b) is clear that to violate the statute, the person moving in interstate commerce must do so with the intent to engage in illicit sexual conduct with another person.

(Mot. at 2 (citing *United States v. Weingarten*, 713 F.3d 704, 709 (2d Cir. 2013); *United States v. Friedman*, 139 F. App'x 330, 332 (2d Cir. 2005).) But here, Defendant argues that the Government critically did not prove, or even allege, that Jacob—"the person to have engaged in sexual conduct with Jane Doe"—had the intent to engage in such illicit sexual conduct. (*Id.*) Instead, Defendant argues that the Government merely alleges in the S3 Superseding Indictment that *he* (Defendant) *and his co-conspirators* (not including Jacob) traveled and transported Jane Doe—then fourteen years old—with the intent of reuniting her with Jacob—then twenty years old—so that they could engage in illicit sexual conduct. (*Id.* at 1–2.) Hence, Defendant argues that the Government failed

4

to prove that there was any agreement between Defendant and the other co-conspirators to violate § 2423(b) because Jacob's intent to engage in illicit sexual conduct is a necessary element for his own alleged violation of § 2423(e). (*Id.* at 2.)

But in opposition, the Government contends that under "basic principles of conspiracy law, a defendant violates § 2423(e) when he agrees that *one of his co-conspirators* will violate § 2423(b)," and that in proving such a violation under § 2423(e), the Government "has no obligation to demonstrate that each conspirator agreed *personally* to commit" a violation of § 2423(b). (Resp. in Opp'n at 5 (emphasis in original).) Instead, the Government contends it only needs to prove that "'the conspirators agreed that the underlying crime *be committed*' by another member of the conspiracy." (*Id.* (emphasis in original).) After due consideration, the Court agrees with the Government.

To establish a violation under § 2423(b), the Government must prove that: (1) the defendant traveled in interstate or foreign commerce; and (2) with a motivating purpose[3] of engaging in illicit sexual conduct. *United States v. Murphy*, 942 F.3d 73, 79 (2d Cir. 2019).

Here, Count Two of the S3 Superseding Indictment alleges the following:

From at least on or about December 5, 2018 up to and including at least on or about December 27, 2018, in the Southern District of New York and elsewhere, Nachman Helbrans, Mayer Rosner, Yakov Weingarten a/k/a "Yaakov," a/k/a "Yankev Nachum," a/k/a "Yakov Nachum," Shmiel Weingarten, and Yoil Weingarten, a/k/a "Yole," a/k/a "Yoel," the defendants, and others known and unknown, would and did knowingly travel in interstate commerce with a motivating purpose of engaging in illicit sexual conduct, and conspired to do so, to wit, Helbrans, Rosner, Yakov Weingarten, Shmiel Weingarten, and Yoil Weingarten devised and executed a plan to travel and transport Minor-1, then fourteen years old, from New York to Pennsylvania and other states en route to Mexico and Guatemala with a motivating purpose of reuniting her with Jacob Rosner, then twenty years old, so that they would engage in illicit sexual conduct—namely, a sexual act with a person under

---

[3] As the Government correctly notes, before the statute's revisions in December 20, 2018, this second prong in § 2423(b) read "*for the purpose* of engaging in any illicit sexual conduct." Despite this revision occurring while Jane Doe was still in Mexico (where the alleged illicit sexual conduct happened), none of the parties argue that this revision is material for purposes of this motion.

5

eighteen years of age that would be in violation of Title 18, United States Code, Section 2243 (a) (which prohibits knowingly engaging in a sexual act with a person under sixteen who is at least four years younger than the person so engaging) if the sexual act occurred in the special maritime and territorial jurisdiction of the United States.

(ECF No. 358 at 9–10.)

To be sure, Count Two does not expressly allege that either Defendant or any other co-conspirator, including Jacob, intended to engage in illicit sexual conduct with Jane Doe. Further, Count Two does appear to allege that Helbrans, Defendant, and the Weingartens devised a plan for *themselves* to "*travel* and transport [Jane Doe] . . . *with a motiving purpose* of reuniting her with Jacob Rosner . . . so that they would engage in illicit sexual conduct." (*Id.* (emphasis added).)

But Defendant attempts to fit the terms "travel" and "with a motivating purpose" in Count Two's allegations as square pegs into round holes in the elements that the Government must prove for the underlying § 2423(b) violation. In other words, Defendant misreads Count Two to allege that: (1) Defendant and his co-conspirators (not including Jacob) traveled in interstate commerce; and (2) with the intent that Jacob engage in illicit sexual conduct with Jane Doe.

To begin, the Government correctly points out that Count Two's "to wit" clause must not be strictly interpreted as such because this clause "is properly understood to be illustrative rather than definitional of the core of criminality charged by the grand jury." *United States v. Agrawal*, 726 F.3d 235, 261 (2d Cir. 2013); *see also United States v. D'Amelio*, 683 F.3d 412, 413–14, 423 (2d Cir. 2012).

But most notably, Defendant's interpretation overlooks that the offense charged in Count Two is a *conspiracy* to travel with the intent to engage in illicit sexual conduct under § 2423(e). Section 2423(e) provides, in relevant part, that "[w]hoever . . . conspires to violate subsection . . . (b) . . . shall be punishable in the same manner as a completed violation of that subsection." 18

U.S.C. § 2423(e). Because the plain text of § 2423(e) includes the term "conspires," the Court construes the provision to incorporate the "long-recognized principles of conspiracy law" under which "the fundamental characteristic of a conspiracy is a joint commitment to an endeavor which, if completed, would satisfy all of the elements of the underlying substantive criminal offense." *Ocasio v. United States*, 578 U.S. 282, 287 (2016); *see also United States v. Castleman*, 572 U.S. 157, 163 (2014) ("It is a settled principle of interpretation that, absent other indication, 'Congress intends to incorporate the well-settled meaning of the common-law terms it uses.'" (quoting *Sekhar v. United States*, 570 U.S. 729, 732 (2013)).

As such, the conspiracy here under § 2423(e) necessarily "has ingredients, as well as implications, distinct from the completion of the unlawful project": the violation of § 2423(b). *Pinkerton v. United States*, 328 U.S. 640, 644 (1946). For instance, "[a]lthough conspirators must pursue the same criminal objective, a conspirator need not agree to commit or facilitate each and every part of the substantive offense." *Ocasio*, 578 U.S. at 288 (quotations omitted). Further, "the Government has no obligation to demonstrate that each conspirator agreed personally to commit—or was even capable of committing—the substantive offense." *Id.* at 292. Indeed, "[i]t is sufficient [for the Government] to prove that the conspirators agreed that the underlying crime *be committed* by a member of the conspiracy who was capable of committing it. In other words, each conspirator must have specifically intended that *some conspirator* commit each element of the substantive offense." *Id.* (emphasis in original).

In sum, for purposes of Count Two here, the Government need only allege and prove that (1) Defendant agreed with his co-conspirators that a § 2423(b) violation be committed by a member of the conspiracy; and (2) with the specific intent that such perpetrating member commit each element of the § 2423(b) violation. But significantly, the Government must neither allege nor

7

prove that the perpetrating member committed each element of the § 2423(b) violation. *See also Pinkerton*, 328 U.S. at 643 ("It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses.")

> With that in mind, Count Two expressly alleges here that Defendant
>
> and others known and unknown, . . . devised and executed a plan to travel and transport [Jane Doe], then fourteen years old, from New York to Pennsylvania and other states en route to Mexico and Guatemala with a motivating purpose of reuniting her with Jacob Rosner, then twenty years old, so that they would engage in illicit sexual conduct—namely, a sexual act with a person under eighteen years of age.

(ECF No. 358 at 9–10.) Thus, the Court concludes that Count Two properly alleges that (1) Defendant agreed with his co-conspirators that a § 2423(b) violation be committed by Jacob; and (2) with the specific intent that Jacob traveled with a motivating purpose of engaging in illicit sexual conduct with Jane Doe.

And finally, when considering the evidence produced at trial in the light most favorable to the Government, the Court is of the view that "any rational trier fact could have found the essential elements of [the § 2423(e) violation] beyond a reasonable doubt." *Persico*, 645 F.3d at 105 (quoting *Jackson,* 443 U.S. at 319). For example, a rational trier of fact could conclude that Defendant orchestrated a plan with Helbrans in which Jacob would travel to New York, Pennsylvania, and New Jersey to help with the kidnapping of the minors, and then travel out of the country towards Mexico (using tickets Helbrans helped him buy) to meet up with Jane Doe and resume his illicit sexual relationship with her. (*See, e.g.*, Trial Tr. at 1790 (Defendant admitting that he discussed kidnapping plans with Shmiel Weingarten on the phone); *id.* at 1796–97 (Defendant admitting that he discussed kidnapping plans with Helbrans); *id.* at 1821 (Defendant admitting that he helped in the so-called "rescue operation"); *id.* at 1844–45 (Defendant admitting

8

that Jacob traveled to Mexico to meet with them after the kidnapping); *id.* at 1850 (Defendant admitting that Jacob traveled from the U.S. to Mexico); *id.* at 1686 (Helbrans admitting that Jacob was with him, Defendant, and Jane in Mexico); GX 407 (stipulation that Jacob—along with Helbrans and Defendant—was detained by Mexican authorities in Mexico following the kidnapping).)

Additionally, contrary to Defendant's arguments, a rational trier of fact could also draw enough inferences from the evidence at trial so as to conclude that Jacob himself, through his own participation and the testimony elicited at trial, that he intended to engage in sexual activity with Jane Doe once they were reunited. (*See, e.g.*, Trial Tr. at 690 (Shimon Malka testifying that Jacob was present in Brooklyn for the meeting to plan the kidnapping); *id.* at 691 (Shimon Malka testifying that the kidnapping was done because Jacob missed his "wife" and it was deemed important to reunite them, for which Helbrans ordered that they be reunited); *id.* at 695 (Shimon Malka testifying that Jacob and others got new phones to use during kidnapping and throw away afterwards); *id.* at 696 (Shimon Malka testifying that Jacob and others went to Walmart to purchase clothing to use during kidnapping); *id.* at 857 (Shimon Malka testifying that Jacob took part in the kidnapping because he wanted his "wife" back); *id.* at 859 (Shimon Malka testifying that Jane and Jacob would continue to have sex when she was returned to Lev Tahor); *id.* at 1336 (Jane testifying that she met up with Jacob and Defendant at hotel in Mexico); *id.* at 1337 (Jane testifying that she slept in room with Jacob in Mexico); *id.* at 1542–43 (testimony that Jacob's cell phone was in Mexico following the kidnapping); *id.* at 1673 (Helbrans testifying that Jacob went to the Walmart in New Jersey to buy clothing for the kidnapping); *id.* at 1677 (Helbrans admitting that after he arrived in Philadelphia on December 6, 2018, Jacob came to see him at his hotel); *id.* at 1677 (Helbrans admitting that he helped book Jacob's flight to leave the country); *id.* at 1682 (Helbrans

9

admitting that Jacob met up with him in Mexico following the kidnapping); GX 171-A (chat from Jacob's phone showing name and address of hotel where Jane was taken in Mexico); GX 171-C (messages where Jacob asks which room his wife is in and says he is on the way to the hotel); GX 171-L1 (image of Google Maps page from Jacob's phone depicting travel time between San Diego and Mexico City); GX 171-J1 (image of flight ticket from Tijuana to Mexico City following the kidnapping, bearing Jacob's name); GX 192 (photo of Jacob during his arrest in Mexico following the kidnapping).

Overall, when viewing the evidence at trial altogether, any rational trier of fact could conclude that Defendant planned the kidnapping of the minors with his co-conspirators, including Jacob, and that a motivating purpose behind the kidnapping was for Jacob to be reunited with Jane Doe so that they could resume their illicit sexual relationship. Therefore, the Court concludes that Defendant fails to carry his burden in establishing that a judgment acquittal is warranted by showing that the evidence that he committed the offense "is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Jiau*, 734 F.3d at 152 (quotations omitted).

## CONCLUSION

For the foregoing reasons, Defendant's motion for judgment of acquittal is DENIED. The Clerk of Court is directed to terminate the motion at ECF No. 443.

Dated: March 8, 2022
       White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge